IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Odell Cobbs, ) | C/A No.: 1:12-3472-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration,[1] ) | |
| ) | |
| Defendant. ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.      Relevant Background

    A.      Procedural History

On December 20, 2006, Plaintiff filed an application for DIB in which he alleged his disability began on March 23, 2003. Tr. at 151–55. His application was denied initially and upon reconsideration. Tr. at 53, 55. On August 4, 2009, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Richard L. Vogel. Tr. at 28–39. The ALJ issued an unfavorable decision on October 28, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 59–66. On August 21, 2010, the Appeals Council remanded the matter for further review. Tr. at 68–70. The ALJ held a second hearing on May 31, 2011. Tr. at 40–52. The ALJ issued a second unfavorable decision on June 9, 2011, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 13–22. The ALJ noted that although Plaintiff asserted an onset date of March 23, 2003, res judicata applied to the period between the alleged onset date and June 2, 2005, the date of the final decision on a prior claim in which Plaintiff did not appeal the adverse decision. Tr. at 13. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–3. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on December 7, 2012. [Entry #1].

B. Plaintiff's Background and Medical History

1. Background

Plaintiff was 63 years old at the time of the second hearing. Tr. at 42. He graduated from high school. Tr. at 43. His past relevant work ("PRW") was as a painter and grave digger. Tr. at 50. He alleges he has been unable to work since March 23, 2003. Tr. at 151.

2. Medical History

Plaintiff received treatment for both his physical and mental conditions at the Department of Veterans Affairs ("VA") Hospital. The record contains treatment notes from January 7, 2002, through July 28, 2009. Tr. at 240–43, 288–31, 333–456, 496–551, 578–734.

During this period, Plaintiff was diagnosed with prostate cancer and received treatment that eradicated the disease. In 2003, Plaintiff received a diagnosis of conventional adenocarcinoma of his right prostate gland with a Gleason's grade of 4+3 Tr. at 297–98. He delayed treatment until February 2008 (Tr. at 705) for reasons such as wanting to attend an upcoming wedding (Tr. at 309), not wanting to sit somewhere to receive treatment for two to three hours (Tr. at 372), and not wanting to lose sexual functioning (Tr. at 363, 543–44). By December 2008, Leander Cannick, III, M.D., noted that, after treatment, there was no evidence of the disease and Plaintiff had not experienced any acute radiation-related toxicities. Tr. at 653.

Plaintiff was also treated for other physical complaints over this period, such as occasional knee pain, leg weakness, fatigue, sleep apnea (reportedly stable and controlled

with home oxygen at night), headaches, and hyptertension (reportedly well controlled with medication). *See, e.g.*, Tr. at 311, 620, 671, 731. Radiological reports from March 22, 2007, showed "mild osteoarthritis" in Plaintiff's left knee and "no acute bony abnormality" in Plaintiff's right elbow, right shoulder, or right foot. Tr. at 462–65.

The notes reflect that Plaintiff also received mental health treatment for post-traumatic stress disorder ("PTSD"), depressed mood, and anxiety. For example, on July 13, 2005, Plaintiff underwent a Compensation and Pension Exam for PTSD resulting in a 50% rating for PTSD related to service in Vietnam. Tr. at 353–57. Plaintiff reported social isolation, suffering from combat-related nightmares two to three times a week, having frequent intrusive memories about Vietnam, and being in consistent hyperarousal with exaggerated startle responses to sudden movements and loud noises, concentration problems, irritability, anger, and numerous episodes of physical aggression. Tr. at 354–55. On December 12, 2005, Plaintiff told Kimberly Bush, M.D., that his tolerance of closed spaces had slightly improved, his nightmares were less frequent, and he felt more relaxed on Risperdal, but still felt "on edge." Tr. at 435–36. On December 19, 2006, D. Slagle, M.S., evaluated Plaintiff's PTSD and wrote that "although [patient] appears to manifest some symptoms consistent with PTSD, the [patient's] most striking[] mental health concern appears to be depression." Tr. at 366.

On February 13, 2006, Plaintiff reported feelings of restlessness with inability to sit still, continued nightmares, occasional flashbacks, more frequent intrusive memories, and continued isolative behavior. Tr. at 416. Mental health follow-up notes dated August 17, 2006, indicate that Plaintiff's mood was mostly poor, that he frequently felt

4

short-tempered, had very little motivation, suffered from difficulty concentrating, and endorsed some anxiety symptoms including being afraid of enclosed spaces and being around a lot of people. Tr. at 387. The examiner's opinion was that Plaintiff's PTSD symptoms were well controlled, but that his mood had not improved with medication. Tr. at 388–89. On August 28, 2006, a VA Compensation and Pension Exam Report indicated that Plaintiff had a 70% disability rating for PTSD and a 100% disability rating for malignant neoplasm. Tr. at 347. On March 8, 2007, psychological follow-up notes indicate that Plaintiff began having somatic symptoms of hot flashes, poor mood, and dyspepsia after his first treatment for prostate cancer. Tr. at 537–39. On May 24, 2007, Plaintiff was noted to be doing better from a psychiatric standpoint, but continued to have baseline dysthymia and minor PTSD symptoms. Tr. at 513.

    C.    The Administrative Proceedings

        1.    The First Administrative Hearing

At the first administrative hearing on August 4, 2009, Plaintiff appeared unrepresented. Tr. at 30. He testified that he was receiving monthly benefits from the VA. Tr. at 31–32. He stated that he last worked as a grave digger in 2003. Tr. at 32. Plaintiff stated he was unable to work because he tired quickly, used oxygen at home (at night for sleep apnea), had prostate cancer, and had "a lot of other stuff like jaundice and pain in [his] joints." Tr. at 33.

Plaintiff testified that he had received 44 days of radiation treatment for his prostate cancer in October and November of 2008 and that the radiation had successfully killed his cancer cells. Tr. at 33–34. He described the symptoms he experienced during

5

the treatments as including hot flashes and difficulties with elimination. Tr. at 34. Plaintiff also testified that he was being treated for PTSD with Zoloft and Xanax as well as therapy sessions that occurred "about every two to three months." Tr. at 36–37. He stated that, because of his PTSD, he sometimes felt like he could not stay inside and also experienced dreams that caused him to wake up sweating. Tr. at 36. He told the ALJ he had received no treatment for Hepatitis C. Tr. at 37. Plaintiff stated that on a normal day, he stayed around the house and tried to do things outside, but would get overheated. *Id.*

### 2.   The Second Administrative Hearing

#### a.   Plaintiff's Testimony

At the second administrative hearing on May 31, 2011, Plaintiff testified that during the relevant time period, he tired easily, was often short of breath and dizzy, and could not walk very far. Tr. at 44–45. He stated that, on some days, he was only able to walk from his bedroom to the kitchen. Tr. at 45. He reported that he frequently had to use the bathroom, had hot flashes, and had trouble being around crowds. Tr. at 45–46. He stated that he had flashbacks in his dreams. Tr. at 47. He testified that his doctor told him that he is "under control with [his] diabetes and stuff." Tr. at 49.

#### b.   Vocational Expert Testimony

Vocational Expert ("VE") Arthur Schmidt reviewed the record and testified at the hearing. Tr. at 50. The VE categorized Plaintiff's PRW as a grave digger as heavy, unskilled work and as a painter as semi-skilled, medium work. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform medium work

with no exposure to industrial hazards, a low-stress setting with no more than occasional decision-making and changes in the setting, and no exposure to the general public. Tr. at 50–51. The VE testified that the hypothetical individual could perform the jobs of janitor, laundry operator, and hand packager. Tr. at 51.

### 3. The ALJ's Findings

In his decision dated June 9, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2008.
2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 23, 2003 through his date last insured of December 31, 2008 (20 CFR 404.1571 *et seq.*).
3. Through the date last insured, the claimant had the following severe impairments: status-post prostate cancer, hepatitis C, post-traumatic stress disorder (PTSD), and obesity (20 CFR 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day. The claimant must avoid exposure to hazards. He is limited to low stress work that does not require more than occasional decision making or changes in the setting and no interaction with the general public.
6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on January 28, 1948 and was 60 years old, which is defined as an individual of advanced age, on the date last insured. The claimant subsequently changed age category to closely approaching retirement age (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

7

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
11. The claimant was not under a disability, as defined in the Social Security Act, from March 23, 2003, the alleged onset date, through December 31, 2008, the date last insured (20 CFR 404.1520(g)).

Tr. at 15–22.

II.  Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) the ALJ did not properly consider Plaintiff's VA disability rating;

2) the ALJ did not perform an adequate listing analysis;

3) the ALJ did not properly evaluate the opinion of the consulting orthopedist;

4) the ALJ performed a flawed credibility analysis; and

5) the RFC determination is not supported by substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

   A.   Legal Framework

       1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g).

The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    VA Disability Rating

Plaintiff contends that the ALJ erred in according little weight to the VA's disability ratings. [Entry #16 at 4]. On August 28, 2006, a medical provider at the VA

11

noted a 70% disability rating for Plaintiff's PTSD and a 100% disability rating for his prostate cancer.  Tr. at 347.  With regard to these ratings, the ALJ stated as follows:

> The undersigned has considered the 70 percent disability rating from the Veterans Administration due to PTSD and 100 percent disability rating for malignant neoplasm.  The undersigned, in according this opinion little weight, concludes that this finding is not consistent with the medical evidence of record and is inflated significantly, especially considering that the claimant's prostate cancer has been treated effectively since disability was determined.  Moreover, determinations of disability made by other agencies are not binding on the Social Security Administration or determinative of disability under Social Security Law (20 CFR 404.1504 and 416.904).  A determination of disability must be based on Social Security Law and Regulations and not on findings of another agency.  However, pursuant to Social Security Ruling 06-03p, the undersigned has considered the fact that the claimant is currently receiving Department of Veterans Affairs benefits due to his medical condition.  The undersigned finds that the receipt of such benefits provides some insight into how the claimant's impairments [] affect his ability to function.

Tr. at 20 (internal citation omitted).

At the time of the hearing and presently, Social Security regulations require the ALJ to consider decisions by other governmental agencies related to the claimant's disability.  SSR 06-03p.  The regulations provide that the SSA is not bound by decisions by other agencies, but state that the ALJ should "explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases."  *Id.*  In this case, the ALJ's brief explanation was commensurate with the evidence in the record before him concerning the VA's determination and was in accordance with then-existing Fourth Circuit precedent.  *See, e.g.*, *Barnett v. Astrue*, C/A No. 3:10-1316, 2012 WL 75046, at *16 (S.D.W.Va. Jan. 10, 2012) ("When comparing the standards for establishing disability promulgated by the SSA to the less exacting

standards employed by the VA, the ALJ's decision to give 'little weight' to the VA determination is entirely reasonable.").

However, after the hearings in this case and the Appeals Council's denial of review, the Fourth Circuit decided *Bird v. Commissioner of Social Security*, 699 F.3d 337 (4th Cir. 2012). The new opinion held that the SSA must give "substantial weight" to a VA disability rating. *Id.* at 343. The *Bird* opinion acknowledged that the SSA and VA apply different standards, but also noted that both "serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and both require extensive medical documentation. *Id.* As a result, a disability rating by one of the two agencies is "highly relevant to the disability determination of the other." *Id.* The opinion also recognized, however, that the "SSA employs its own standards for evaluating a claimant's alleged disability, and [ ] the effective date of coverage . . . under the two programs will likely vary." *Id.* As a result, even under the new rule announced in *Bird*, the Commissioner may give less weight to a VA rating "when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Here, Plaintiff argues that the ALJ's treatment of the VA ratings does not comply with the *Bird* decision. [Entry #16 at 4]. The Commissioner contends that the ALJ's weighing of the ratings was proper and well supported by the evidence. [Entry #19 at 9]. Specifically, the Commissioner asserts that the ALJ properly gave less weight to the VA's rating related to Plaintiff's prostate cancer because the cancer had successfully been eradicated with medical treatment. *Id.* at 10. Further, the Commissioner asserts that the ALJ properly gave limited weight to the VA's rating related to Plaintiff's PTSD because

13

the medical evidence, cited elsewhere in the ALJ's decision, was inconsistent with the rating. *Id.*

While the ALJ identified reasons for discounting the VA ratings, his analysis was based on the law as it existed before the Fourth Circuit addressed "the precise weight that the SSA must afford to a VA disability rating." *Bird*, 699 F.3d at 343. After carefully reviewing the ALJ's analysis and the record, the undersigned is unable to conclude that, after *Bird*, the ALJ's analysis is supported by substantial evidence, or that the ALJ would have reached the same conclusion in light of the new standard. While the ALJ provided a solid reason for discounting the VA rating related to Plaintiff's cancer, his rationale for discounting the rating related to Plaintiff's PTSD, a continuing condition, was the conclusory statement that it was "not consistent with the medical evidence of record and [was] inflated significantly." Tr. at 20. While the ALJ's discussion of the PTSD-related medical records elsewhere in the decision may have been sufficient pre-*Bird*, the undersigned is unable to find that the ALJ's discussion of the VA ratings "clearly demonstrates" that deviation from the VA ratings was appropriate. *Bird*, 699 F.3d at 343. Therefore, the undersigned recommends this matter be remanded for evaluation of the VA ratings in accordance with the standard set forth in *Bird*. *See Ladson v. Astrue*, No. 4:11-2565, 2013 WL 655971, at *9 (D.S.C. Feb. 22, 2013) (remanding matter based on ALJ's failure to afford significant weight to a VA rating decision or sufficiently explain why the giving of less weight would be appropriate). In recommending remand, the undersigned does not intend to suggest that the ALJ's RFC finding could not be sustained

under the new standard, only that discounting the VA's ratings requires greater explanation.

To the extent that the Commissioner contends that the record contains too little information regarding the substance of the VA's disability determination for *Bird* to apply, the undersigned would remind her of the ALJ's duty to fully and fairly develop the record. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *see also Herrien v. Astrue*, C/A 2:11cv560, 2013 WL 1121361, at *11–12 (E.D. Va. Feb. 21, 2013) (recommending holding that, under *Bird*, the ALJ erred in failing to develop the record regarding disability determination by other federal agencies), *adopted by* 2013 WL 1057173.

2.     Plaintiff's Remaining Allegations of Error

Because the undersigned recommends remand for the ALJ to consider the VA disability ratings in light of *Bird*, Plaintiff's remaining allegations of error are not addressed. The undersigned notes, however, that the ALJ's assessment of the VA ratings may impact the RFC determination. The undersigned further notes that the ALJ offered several valid reasons for discounting Dr. McGill's opinion and Plaintiff's credibility. With regard to Plaintiff's contention that the ALJ conducted a flawed listing analysis, the undersigned notes that the ALJ specifically noted at step three that he had considered the combined effects of Plaintiff's impairments and determined that the findings related to them were not at least equal in severity to those described in any listing. Tr. at 17.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based

on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.  Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

    IT IS SO RECOMMENDED.

January 13, 2014                                      Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).